# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### SOUTHERN DIVISION



RECEIVED
2020 JAN 14 P 12:08
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| Earl Shaffer, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No.: |
| § | 1:20-cv-32 |
| Pilgrim's Pride § | JURY DEMAND |
| Corporation, § | |
| § | |
| Defendant. § | |

## COMPLAINT

## INTRODUCTION

1. This is an action for redress of unlawful conduct committed by the Defendant in violation of the Americans with Disabilities Act as amended ("ADA"), 42 U.S.C. 12101 et. seq. The Plaintiff requests a trial by jury of all issues so triable to a jury.

## JURISDICTION

2. The jurisdiction of this court is invoked pursuant to 28 U.S.C. §§1331, 42 USC 12117 and 42 USC 2000e-5(f)(3).

3. Pilgrim's Pride Corporation employed the Plaintiff in Enterprise, Alabama where the events or omissions giving rise to the Plaintiff's claims occurred. Therefore, venue in the Middle District of Alabama is proper pursuant to 28 U.S.C. § 1391.

## PARTIES

4. At all relevant times herein, the Plaintiff, Earl Shaffer (hereinafter "Plaintiff" or "Mr. Shaffer") has been an Alabama resident over age 19 and was an employee for purposes of the ADA, 42 U.S.C. §12111.

5. Pilgrim's Pride Corporation ("Pilgrim's") is a Colorado corporation, registered to do business in the State of Alabama. Upon information and belief, Pilgrim's is engaged in commerce, operates a facility in Enterprise, Alabama and directly employed the Plaintiff. It employs more than 50 people and is considered an employer for all purposes herein.

## ADMINISTRATION PREREQUISITES

6. Plaintiff filed his charge of discrimination with the Equal Employment Opportunity Commission on August 20, 2018. Thereafter, Defendant responded to the charge as the employer. The EEOC Letter of Determination was issued August 9, 2019 and the Notice of Rights was issued on October 21, 2019, and are attached hereto as Exhibit A. This Complaint is filed within ninety (90) days of Plaintiff's receipt of his Notice of Rights.

## STATEMENT OF FACTS

7. Due to injuries incurred in the military prior to 2004, Mr. Shaffer suffered a torn meniscus in his left knee; a thoracolumbar spine strain with L5/S1 disc protrusion and annular tear; and now has arthritis; sciatica; bulging discs; and chronic pain in his wrist, ankle, and right knee. He has also been diagnosed with spina bifida. These physical impairments substantially limit his major life activities including walking, lifting, sitting and standing for long periods of time. As such, Mr. Shaffer's conditions qualify as disabilities under the ADA, 42 U.S.C. §12102.

8. Since 1998, Mr. Shaffer has been under the care of several doctors from the Department of Veterans Affairs who specialize in his impairments. Mr. Shaffer's doctors have never informed him that his diagnoses interfere with his ability to be employed full time.

9. Mr. Shaffer began work for the Defendant in 2004 as a Loader Driver. He has also held positions as a Weighmaster and in the Live Haul Utility division and successfully performed his duties for the next thirteen years. He is therefore a qualified individual with a disability for purposes of the ADA. He effectively worked in these positions until he was terminated on March 30, 2018.

10. On or about October 16, 2017, Mr. Shaffer requested an accommodation of his disability under the ADA seeking a parking spot in close proximity to the scale house, where he was to report to work. The closer parking spot would allow him to avoid the pain associated with walking one half mile each day to and from the scale house, before and after standing for the majority of his nine hour shift.

11. Randall McIntosh, the Live Haul Manager, denied Mr. Shaffer's request and stated, "I am not getting involved in that." Mr. Shaffer then contacted JoAnn Aplin, the Human Resources Coordinator, as well as several other employees, multiple times for the next two months to renew his request but was denied. However, visitors, contractors, and several other employees including Mr. McIntosh and the Live Haul Supervisor, Ray Kelley, were allowed to park behind the Plant and had access to a company golf cart.

12. In November 2017, Mr. Shaffer's condition worsened and one of his doctor's certified the need for a handicap placard. Mr. Shaffer notified the Human Resources Manager, Matthew Parkinson, as well as the Safety Manager, Aaron Green, of this, however, Mr. Shaffer was still not accommodated with closer parking.

13. In March 2018, Mr. Shaffer contacted Ms. Aplin again and asked for a reasonable accommodation request form to allow him a closer parking spot. Ms. Aplin told Mr. Shaffer she was unfamiliar with that form and his request was denied.

14. While Mr. Shaffer was working as a Weighmaster, his job responsibilities included preparing the trucks for deliveries by securing the trailers with special hooks.

15. The hooks he was required to use were broken and too short to be secured properly, which resulted in them being under extreme tension. In order to properly secure the shorter hooks he had to jump to reach them, which caused severe stress to his back and knees. He continuously requested new and longer hooks, not only as an accommodation under the ADA, but also as a safety precaution. Mr. Shaffer's requests for this accommodation were denied and he did not receive new equipment until it was requested by other employees.

16. In late January 2018, Mr. Shaffer began experiencing severe pain in his back and knees and requested another accommodation under the ADA in an alternate position.

17. On or about January 31, 2018, Mr. Shaffer asked Mr. Kelley if the Live Haul Utility position ("Accommodated Position") was available and Mr. Kelley confirmed that the position was open. Mr. Shaffer continued to request the Accommodated Position for the next two weeks and was eventually transferred temporarily to the position for approximately one month, when he was moved back to the Weighmaster position.

18. During the period Mr. Shaffer was working in the Accommodated Position, he repeatedly told Mr. Kelley he preferred the new position and wanted to continue there as it required less strenuous activity. However, Mr. Kelley told Mr. Shaffer he could not permanently transfer to the Accommodated Position until there was a replacement for the

Weighmaster position. Mr. Kelley made no effort to find a replacement and did not post the position.

19. On or about March 6, 2018, Mr. Shaffer submitted for approval a written notice of the transfer request on a leave request form to Mr. McIntosh in order to continue in the Accommodated Position. Approximately one week later, Mr. Kelley told him he would need to complete an official transfer request form to formalize the position change. At that time Matthew Parkinson, the Human Resources Manager, told Mr. Shaffer the Accommodated Position would need to be posted in order to assign it to him. The position was not posted until Mr. Shaffer inquired about it again on March 22, 2018. He applied for the position on that date.

20. Approximately one week after Mr. Shaffer applied for the Accommodated Position he was retaliated against and terminated based on his disability.

## COUNT ONE
## AMERICANS WITH DISABILITIES ACT
## Failure to Make Reasonable Accommodation

21. Plaintiff incorporates paragraphs 1 through 20 by reference as if fully restated herein.

22. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to …discharge of employees.. and other terms and conditions of employment. 42 U.S.C. §12112 (a). "Discriminate against a qualified individual on the basis of disability" includes the failure to make reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, where there is no undue hardship. 42 U.S.C. §12112(b)(5)(a); 29 CFR 1630.9.

23. At all relevant times herein, the Defendant was aware that the Plaintiff was a qualified individual with a disability and that the Plaintiff requested the following reasonable accommodations of that disability: (1) closer parking; (2) new equipment; (3) and a transfer to the open Live Haul Utility position.

24. The Defendant wrongfully discriminated and retaliated against the Plaintiff in violation of the ADA by failing to reasonably accommodate his disability and by terminating his employment.

25. As the proximate result of the acts and omissions of the Defendant, the Plaintiff has suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He has also suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

26. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the ADA.

## COUNT TWO
## AMERICANS WITH DISABILITIES ACT - DISCRIMINATION
### Denial of employment where denial is based upon the need to make accommodation

27. The Plaintiff incorporates paragraphs 1 through 20 by reference as if fully restated herein.

28. The ADA states that no covered entity shall discriminate against a qualified individual on the basis of disability in regard to…discharge of employees…and other terms and conditions of employment. 42 U.S.C. §12112 (a). The term Discriminate against a qualified individual on the basis of disability includes denying employment opportunities to an employee who is an otherwise qualified individual where the denial is based on the need to make reasonable accommodation to the employee. 42 U.S.C. §12112(b)(5)(B).

29. The Defendant violated the above section of the ADA by denying Plaintiff his employment opportunity based on the need to make reasonable accommodations to the Plaintiff when it terminated his employment on March 30, 2018.

30. As the proximate result of the acts and omissions of the Defendant, the Plaintiff suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He also has suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

31. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the cause of injustice may require, including, but not limited to, an award of costs, attorney's fees and expenses and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the ADA.

## COUNT THREE
## AMERICANS WITH DISABILITIES ACT – RETALIATION

32. The Plaintiff incorporates paragraphs 1 through 20 by reference as if fully restated herein.

33. The ADA states that no person shall discriminate against any individual because the individual has opposed any act or practice made unlawful by this Act. 42 U.S.C. §12203(a). "It shall be unlawful to coerce, intimidate, threaten or interfere with any individual in the exercise or enjoyment of or on account of his or her having exercised or enjoyed…any right granted by this Act." 42. U.S.C. §12203(b).

34. The Plaintiff engaged in activity protected by the ADA by requesting accommodations of his disability.

35. The Defendant violated 42 U.S.C. §12203(b) in March 2018, when it retaliated against the Plaintiff because of the protected activity by, among other things, providing conflicting instructions for the application process in order to delay or prevent formalization of the Accommodated Position, and by terminating his employment.

36. As the proximate result of the acts and omissions of the Defendant, the Plaintiff suffered damages including loss of past and future earnings, benefits, interest, costs and other pecuniary loss. He also suffered from severe emotional and mental distress, anguish, humiliation, embarrassment, discomfort and anxiety.

37. Plaintiff therefore seeks relief in order to make him whole by awarding him compensatory damages for the wrong endured and punitive and/or nominal damages as determined by the jury. The Plaintiff further prays for such other relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorney's fees and expenses and all other damages allowed by law.

WHEREFORE, the Plaintiff prays that judgment be entered in his favor and against the Defendant herein for all such damages which are allowed by law to redress the wrong committed in violation of the Americans with Disabilities Act.

Respectfully submitted this 13th day of January, 2020.

*/s/ M. Amelia Mitta*
M. Amelia Mitta (ASB-4480-B18P)
Ashton Ott (ASB-7085-E58A)
Farmer Price LLP
100 Adris Place
Dothan, Alabama 36303
Tel:   334/793-2424
Fax:  334/793-6624

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY ON ALL ISSUES TRIABLE TO A JURY.**

*/s/ M. Amelia Mitta*
M. Amelia Mitta

**SERVE DEFENDANT AT:**

Pilgrim's Pride Corporation
c/o CORPORATION SERVICE COMPANY INC.
641 South Lawrence Street
Montgomery, AL 36104

Courtesy Copy To:
Pilgrim's Pride Corporation
1770 Promontory Circle
Greeley, CO 80634-9039